UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEROME SUGGS, | |
| *Petitioner*, | Civil No. 3:20cv634 (JBA) |
| *v.* | March 30, 2023 |
| UNITED STATES OF AMERICA, | |
| *Respondent.* | |

**RULING DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Jerome Suggs was sentenced to life in prison under 18 U.S.C. § 3559(c) (the Three Strikes Act) after this Court found that his Hobbs Act robbery conviction was a serious violent felony offense and that he had been convicted in the past of at least two additional serious violent felony offenses. He now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that the Supreme Court's decision in *Johnson v. United States,* 135 S. Ct. 2551 (2015), renders the residual clause in § 3559(c)(2)(F)(ii) unconstitutional, requiring his sentence to be vacated to the extent it relied on the residual clause's definition of "serious violent felony." (Petition [Doc. # 1]). The Government opposes, arguing that Petitioner's sentence remains sound even after *Johnson* because his conviction and prior offenses fall within one of the alternative definitions of "serious violent felony" laid out in § 3559(c)(2)(F)(i) or (ii), both of which were left untouched by the Supreme Court's ruling. [*See* Docs. ## 5, 13, 18.]

**I.   Procedural History**

**A.   Background**

Petitioner was indicted on one count of Hobbs Act robbery "by demanding money and displaying, brandishing, and discharging a firearm" in violation of 18 U.S.C. § 1951 (Count 1);

one count of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2); and one count of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), § 924(a)(2), and § 924(e)(1) (Count 3). (Gov't's Mem. in Opp'n to § 2255 Petition, [Doc. # 5] at 4.) The Government timely filed prior to trial an information pursuant to 18 U.S.C. § 3559(c)(4) and 21 U.S.C. § 851 informing Petitioner that Count One and/or Count Two were serious violent felony offenses, and that he would thus be subject to a mandatory life imprisonment sentence based on prior qualifying predicate felony convictions:

(1) On or about July 28, 1989, Suggs was convicted of Assault in the First Degree in violation of Conn. Gen. Stat. ' 53a-59(a)(1), and Attempted Robbery in the First Degree, in violation of Conn. Gen. Stat. §§ 53a-134(a)(2) and 53a-49 (No. 06N-CR89-302459);

(2) On or about July 28, 1989, Suggs was convicted of Attempted Assault in the First Degree in violation of Conn. Gen. Stat. §§ 53a-59(a)(1) and 53a-49 (No. 06N-CR89-302460).

(3) On or about November 18, 1983, Suggs was convicted of Assault in the First Degree in violation Conn. Gen. Stat. §§ 53a-59(a)(3)(No. 06N-217709); and

(4) On or about September 30, 1983, Suggs was convicted of Conspiracy to Commit Robbery in the First Degree in violation of Conn. Gen. Stat. §§ 53a-48(a) and 53a-134 (No. CR6-213209).

(*Id.* at 5.) Counts 1 and 2 were severed from Count 3 for trial; Petitioner was convicted of Count 1 and 2 by jury verdict on June 14, 2000, and pled guilty to Count 3 on June 20, 2000. (*Id.* at 4.) Based on the prior felony information filed by the Government, Court imposed a sentence of life imprisonment for both Counts One and Two, and thirty years imprisonment on Count Three; both Counts Two and Three were ordered to run consecutively. (*Id.* at 5.) The Court did not specify at sentencing whether it found that his primary conviction or predicate offenses relied on the definition of serious violent felony offense found in the enumerated offense, elements, or residual clause, and the Presentencing Report was

similarly silent on the issue. (*See United States v. Suggs,* 3:99-cr-00244-JBA, Sentencing Tr. [Doc. # 115]; Pet'r's Mem. in Support of § 2255 Petition, [Doc. # 12] at 4.)

### B.   Direct Appeal and Prior Petitions

Petitioner filed a direct appeal that primarily challenged the Court's ruling on his pretrial motions, certain jury instructions, and the sufficiency of the evidence that money was stolen during the robbery. (Gov't Mem. in Opp'n [Doc. # 5] at 5-6.) The Second Circuit rejected each challenge and affirmed the judgment. *United States v. Suggs*, 14 Fed. App'x. 54, 55-57 (2d Cir. July 5, 2001) (summary order). Following his direct appeal, Petitioner filed three petitions pursuant to 28 U.S.C. § 2255. The first challenged "the § 3559(c) sentencing enhancement imposed based on his prior convictions, the district court's subject matter jurisdiction, a portion of the government's closing argument, and the district court's suppression ruling." (Gov't Mem. in Opp'n [Doc. # 5] at 6.) This Court denied the motion, and neither this Court nor the Second Circuit issued a certificate of appealability. (*Id.*) The Second Circuit also denied authorization to file a second petition seeking to raise an ineffective assistance of counsel claim and challenging the convictions serving as predicates for the sentencing enhancement under § 3559(c), and a third petition, which sought to construe an amended judgment issued to correct a typographical error as a new judgment allowing for the filing of another § 2255 petition without being subject to the successive petition restrictions. (*Id.* at 7.)

### C.   Procedural History of the Current Petition

Petitioner filed a § 2255 petition on June 26, 2016, within one year of the Supreme Court's decision in *Johnson*, as required by 28 U.S.C. § 2255(f)(3). (*See United States v. Suggs,* 3:16-cv-1073, Mem. in Support of Pet. ("2016 Mem.") [Doc. #1].)[1] At Petitioner's request,

---

[1] Petitioner's motion was initially filed June 26, 2016 under the case number 3:16-CV-1073 (JBA); after the Second Circuit granted the motion to file the successive petition, it was refiled under the case number 3:20-CV-634(JBA). Although the memorandum in support of the first

proceedings on the petition were stayed pending the Second Circuit's ruling on his motion to authorize a successive petition, which he filed on May 25, 2016. (*See* 3:16-CV-1073 (JBA), [Doc. # 4].) The Second Circuit in turn stayed its ruling on Petitioner's motion until it decided *United States v. Hill,* 890 F.3d 51, 60 (2d Cir. 2018), and *United States v. Barrett,* 937 F.3d 126, 129–30 (2d Cir. 2019), both of which addressed whether certain Hobbs Act convictions qualified as crimes of violence under 18 U.S.C. § 924. (Gov't's Mem. in Opp'n [Doc. # 5] at 8.) After both were decided, Petitioner filed another motion on February 28, 2019 to stay the proceedings while a writ of certiorari to the Supreme Court was pending in *Barrett,* and after a writ had been granted in the related case *United States v. Davis.* (*Id.* at 8-9.) On June 28, 2019, the Supreme Court vacated and remanded *Barrett* to the Second Circuit in light of its decision in *Davis.* (*Id.* at 8.) The Second Circuit subsequently issued a new decision in *Barrett* on August 30, 2019. (*Id.*) On November 14, 2019, Suggs filed a brief with the Second Circuit in which he focused his arguments on the underlying Connecticut convictions that had served as predicates for his sentence enhancements. (*Id.* at 9.)

On May 5, 2020, the Second Circuit granted Petitioner's motion for leave to file a successive petition on three grounds:

> First, the § 3559(c)(2)(F)(ii) risk-of-force clause may be unconstitutional after [*Johnson, Dimaya*, and *Davis*]. *See, e.g.*, *United States v. Morrison*, 751 F. App'x 1026, 1027 (9th Cir. 2019) (vacating denial of § 2255 motion and remanding to district court to reconsider whether § 3559(c)(2)(F)(ii) is unconstitutionally vague after *Dimaya*). Second, Petitioner's July 28, 1989 convictions identified in the § 3559(c) information likely cannot count as separate predicates. *See* 18 U.S.C. § 3559(c)(1)(B) (providing that the second "violent felony or serious drug offense used as a basis for sentencing" must have been committed after conviction for the first). Third, his 1983 convictions may not satisfy the § 3559(c)(2)(F)(i) enumerated offenses clause or the § 3559(c)(2)(F)(ii) force-clause definition of "serious violent felony." *See United States v. Barrett*, 937 F.3d 126, 129–30 (2d Cir. 2019) (conspiracy to commit Hobbs

---

petition relied on slightly more expansive grounds for relief, both petitions rely primarily on the retroactive effect of *Johnson*; the cases are now consolidated. Unless otherwise indicated, citations to the "petition" refer to the 2020 petition.

Act robbery does not satisfy the 18 U.S.C. § 924(c)(3)(A) force clause); *United States v. Moreno*, 821 F.3d 223, 228 (2d Cir. 2016) (first-degree assault under Conn. Gen. Stat. § 53a-59(a)(3) does not satisfy the 18 U.S.C. § 16(a) force clause).

Order, *Suggs v. United States*, No. 16-1671 (2d Cir. May 5, 2020) at 2. Petitioner filed a petition for relief on the above grounds on May 5, 2020. (Petition, [Doc. # 1].) However, on November 20, 2020, Petitioner moved to stay relief pending a ruling on his motion for sentencing relief under 18 U.S.C. § 3582(c)(1)(A), which this Court granted. (*See* [Doc. # 19].) On June 28, 2021, the Court granted in part the motion for sentencing relief and reduced Petitioner's life sentence to 260 months, followed by eight years supervised release; his projected release date is now February 16, 2027. (Pet'r's Mem. [Doc. # 12] at 1.) Briefing on the petition concluded on October 14, 2022.

## II.  Legal Standard

Section 2255 permits collateral challenges to the constitutionality of the imposition of a federal sentence and is the proper vehicle for such challenges. *Walton v. Williams*, No. 3:18-CV-1993 (MPS), 2021 WL 3292650, at *1 (D. Conn. Aug. 2, 2021). Collateral relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir.1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962). However, even constitutional errors will only serve as the basis for granting a § 2255 petition if they have a "substantial and injurious effect" that resulted in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)[2]; *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999). While § 2255 petitions cannot be employed to "relitigate questions which were raised and considered on direct appeal," *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992), a court may reconsider

---

[2] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

an earlier decision if "confronted with 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)). Petitioner bears the burden of proving he is entitled to relief by a preponderance of the evidence. *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

### III. Discussion

Petitioner was sentenced under 18 U.S.C. § 3559(c), which requires the court to sentence a defendant to life imprisonment if he or she is convicted of a "serious violent felony" after conviction for "2 or more serious violent felonies" on "separate prior occasions" in federal or state court under Section (c)(1). Section 3559 (c)(2)(F) sets out three alternative definitions of "serious violent felony." First, § 3559 (c)(2)(F)(i) enumerates a list of specific offenses that automatically qualify as a serious violent felony, including robbery under 18 U.S.C. § 2111 and 2113; this is known as the "enumerated offense" clause. Second, Section 3559 (c)(2)(F)(ii) defines a serious violent felony as "any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another[;]" this is known as the "elements/force" clause. Third, Section (ii) also defines a crime as a serious violent felony when it "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense[;]" this is known as the "residual" clause, and is the clause at issue in this case.

As a threshold matter, the Government argued—for the first time at oral argument after three years of briefing—that the petition should be dismissed because even if it is granted, after his sentence was already reduced by the Court in June of 2021, it is unclear whether a second resentencing would or could result in an even lower sentence. However, the Government's argument is undermined by *Roach v. Conway*, No. 05-CV-6500, 2009 WL

4572730, at *3 (W.D.N.Y. Dec. 7, 2009), finding that even if the petitioner had been released from prison while his petition was pending, if his sentence caused any collateral consequences, there would still be a case or controversy requiring resolution. Petitioner maintained at oral argument that there is no guarantee that there are *no* potential collateral consequences to Petitioner from having been sentenced under the Three Strikes Act. Given this unknown, the Court will address the petition on its merits.

Petitioner's challenge to his sentence arises out of several Supreme Court decisions interpreting similar "residual" clauses and finding them to be unconstitutionally vague. *See Johnson v. United States,* 576 U.S. 591 (2015); *Sessions v. Dimaya,* 138 S. Ct. 1204, 1207 (2018); *United States v. Davis,* 139 S. Ct. 2319 (2019). In all three cases, the clauses required use of the "categorical" approach to determine whether the offense fit the definition of serious violent felony; that approach required the court to "assesses whether a crime qualifies as a violent felony in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Johnson,* 576 U.S. at 596. The combination of the categorical approach and the ambiguous language in the residual clauses created uncertainty for district courts as to how they should evaluate whether a crime "by its nature" involved such a risk, and what "substantial risk" meant in the abstract sense associated with an "ordinary crime." *Id.* Based on this uncertainty, the Supreme Court found the residual clause in *Johnson,* and the two similar clauses in *Sessions* and *Davis,* to be unconstitutional.

Section 3559(c)(2)(F)(ii)'s residual clause is nearly identical to the ones the Supreme Court found were unconstitutional in *Johnson, Dimaya,* and *Davis;*[3] it also requires courts to determine what constitutes "substantial risk" of force "by its nature" without reference to

[3] The Government confirmed at oral argument that it does not challenge Petitioner's contention that the residual clause is unconstitutional post *Johnson.*

the facts of the actual crime committed using the categorical approach. *See Deida v. United States,* No. 3:13-CV-1608 (SRU), 2017 WL 2661622, at *10 (D. Conn. June 20, 2017), *vacated and remanded on other grounds*. Because *Davis* makes clear that a residual clause requiring a categorical approach cannot be sustained as constitutional, the Court concludes that § 3559(c)(2)(F)(ii)'s residual clause is unconstitutional. Other courts have reached the same conclusion. *See United States v. Goodridge,* 392 F. Supp. 3d 159, 174 (D. Mass. 2019)(holding that § 3559(c)(2)(F)(ii)'s residual clause was unconstitutional because it suffered from the same defects as the residual clauses in *Johnson* and *Dimaya*); *United States v. Milton*, No. 5:95-CR-70074, 2021 WL 1554384, at *13 (W.D. Va. Apr. 20, 2021), *appeal dismissed*, No. 21-7316, 2022 WL 2355508 (4th Cir. June 30, 2022), *and appeal dismissed*, No. 21-7316, 2022 WL 2355508 (4th Cir. June 30, 2022) (same).

Petitioner asserts that because § 3559(c)(2)(F)(ii)'s residual clause is unconstitutional, his sentence cannot be sustained. However, his prior convictions can still serve as predicate offenses if they meet the definition of "serious violent felony" under the remaining two alternative definitions in § 3559(c)(2)(F)(i) or (ii)—the enumerated offense clause and the force/elements clause—and so the Court will evaluate whether each prior conviction falls within either alternative definition.[4]

### A. Qualifying Prior Convictions

---

[4] Petitioner's counsel represented at oral argument that he is not pursuing his initial argument that his primary conviction for Hobbs Act robbery does not qualify as a serious violent felony. In fact, Hobbs Act robbery qualifies as a serious violent felony under either the elements or enumerated offense clauses. *See United States v. Hill,* 890 F.3d 51, 60 (2d Cir. 2018) (finding that Hobbs Act robbery has as an element use, attempted use, or threatened use of physical force for purposes of 18 U.S.C. § 924); *United States v. Howard*, No. 213CR00186GMNVCF1, 2021 WL 5988540, at *4 (D. Nev. Dec. 16, 2021), *certificate of appealability denied*, No. 22-15040, 2022 WL 2700324 (9th Cir. June 24, 2022) (denying a § 2255 petition to overturn a life sentence pursuant to § 3559(c) because petitioner's Hobbs Act robbery conviction fell within the purview of the enumerated offense clause).

Petitioner does not contest the Government's argument that his July 28, 1989 conviction for Assault in the First Degree is a sufficient predicate under 18 U.S.C. § 3559(c), (Pet.'s Mem. [Doc. # 12] at 5), nor does the Government challenge Petitioner's assertion that his July 28, 1989 convictions for Attempted Assault in the First Degree and for Attempted Robbery in the First Degree cannot be sufficient predicates because any qualifiable predicate "must be committed *after* the defendant has been sentenced for previous predicates" under 18 U.S.C. § 3559(c)(1)(b). (*Id.* at 6.) The only disagreement is over whether Petitioner's two remaining convictions—conspiracy to commit robbery and first-degree assault under Conn. Gen. Stat. § 53a-59(a)(3)—qualify. Petitioner argues that neither conviction meets the definition of serious violent felony under either § 3559 (c)(2)(F)'s enumerated offense or force/elements clause; the Government disagrees. (*Id.*)

### 1.  November 18, 1983 Conviction for Assault in the First Degree

Petitioner was convicted of assault in violation of Conn. Gen. Stat. § 53a-59(a)(3). (*Id.* at 5.) Section 53a-59(a)(3) defines assault as being in the first degree when committed "under circumstances evincing an extreme indifference to human life [the defendant] recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person." *Id.* Petitioner argues that because this definition encompasses reckless conduct, it cannot serve as a qualifying predicate offense under *Borden,* which held that "violent felony" in the Armed Career Criminal Act did not include criminal offenses with a *mens rea* of recklessness. *Borden v. United States*, 141 S. Ct. 1817, 1825 (June 10, 2021).

The Government argues that *Borden* applied only to ordinary recklessness, and that the plurality did not address offenses involving "extreme recklessness," the mental state defined by § 59(a)(3). (Gov't's First Response [Doc. # 13] at 7.) In the Government's view, recklessness did not satisfy the requirements of ACCA's elements clause because the phrase "against" another means that the victim must be the "conscious object" rather than the "mere

recipient" of the force, which cannot be reconciled with reckless conduct that is "not directed or targeted at another" but instead implies "insufficient attention to the potential application of force." (*Id.* at 8.) Extreme recklessness, the Government argues, can be distinguished because it requires "subjective awareness of the extreme risks the conduct poses," (*id.*) (quoting *United States v. Báez-Martinez*, 950 F.3d 119, 127 (1st Cir. 2020)), and is "more akin to knowledge" under Connecticut law. (*Id.*) (citing *State v. Best*, 745 A.2d 223, 231 (Conn. App. 2000)).

However, while the Government is correct that *Borden* focused on the structure and text of the clause in finding that the word "against" required a "conscious object" of the perpetrator's force, it also looked to the purpose and general understanding of what a "violent, active crime" is, i.e. "best understood to involve not only a substantial degree of force, but also a purposeful or knowing mental state—a deliberate choice of wreaking harm on another, rather than mere indifference to risk." *Borden,* 141 S. Ct. at 1830. Thus, in considering whether the Connecticut definition of "extreme indifference to human life" is sufficient to constitute a "serious violent felony," the Court focuses its analysis on *Borden's* distinction between deliberate choice and mere indifference. In *State v. Bunker,* 27 Conn. App. 322 (1992), the trial court's jury instruction that "extreme indifference to human life" as used in § 59(a)(3) was equivalent to "a high degree of disinterest to human life" was affirmed. Relying in part on *State v. Spates'* definition of "extreme indifference to human life" in the context of a murder statute and its instruction that "mere carelessness is not enough, nor is ordinary recklessness enough. . . . [and] intent is not necessary," *Bunker* characterized extreme indifference to human life as "one step further toward culpability than ordinary recklessness." *Id.* at 326-27 (citing to 176 Conn. 227, 236-37 (1978)).

Under *Spate* and *Bunker,* the Government's construction of § 59(a)(3) cannot prevail since "extreme" modifies the *degree* of indifference that is required but does not transform that indifference into a "deliberate choice" to make the victim a "conscious object" of the

force, and is thus not reconcilable with § 3559(c)(3)'s definition of "serious violent felony." *See also United States v. Moreno,* 821 F.3d 223 (2d. Cir. 2016) (a conviction for attempted reckless assault under Conn. Gen. Stat. § 53a-60(a) was legally impossible because recklessness was definitionally incompatible with the fact that attempt can only occur when a person "*[i]ntentionally* engage[s] in conduct which would constitute the crime") (emphasis added).

Petitioner's November 18, 1983 conviction for assault in the first degree is thus not a predicate offense for purposes of his life sentence, and his sentence can only be upheld if the Court finds that his conviction for conspiracy to commit robbery is a proper predicate.

## 2. September 30, 1983 Conviction for Conspiracy to Commit Robbery in the First Degree

The Government contends that Petitioner waived any argument on this conviction's eligibility under on § 3559(c)(3)(A) by not raising it at sentencing. (Gov't First Response [Doc. # 13] at 6, n.3.)

### a. Conspiracy to Commit Robbery as a Serious Violent Felony Offense

Petitioner initially argued in his 2016 petition that his prior convictions did not qualify as serious violent felonies under the enumerated offense or elements clauses of 18 U.S.C. § 3559(c) because they "do not constitute generic versions of any listed crimes." (*United States v. Suggs,* 3:16-cv-1073, 2016 Mem. [Doc. # 1] at 4.) Petitioner appears to have abandoned the argument that conspiracy to commit robbery is not a serious violent felony, as his more recent focus in his briefing is on his conviction as falling under an exception for nonqualifying felonies, § 3559(c)(3)(A). (*See e.g.*, Pet'r's Reply [Doc. # 14].) However, in an abundance of caution, the Court's opinion addresses whether the offense itself falls within either remaining definition of "serious violent felony" in U.S.C. § 3559(c).

Connecticut defines conspiracy as "when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the

performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy" under Conn. Gen. Stat. § 53a-48. Robbery is defined in Conn. Gen. Stat. § 53a-133 as "when, in the course of committing a larceny, [the defendant] uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." Section 53a-134 specifically defines robbery in the first degree:

> A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . .

The Government contends that because Connecticut's definition of robbery under § 53a-133 and 134 "largely track" the federal definition of robbery, conspiracy to commit the same similarly qualifies as a serious violent felony under the enumerated offense clause because under § 3559(c)(2)(F)(i), the enumerated offense clause "identifies any robbery in violation of [the federal statute], or an inchoate version of such a robbery—namely, attempt, conspiracy, or solicitation to commit the offense—as a serious violent felony." *United States v. Snype*, 441 F.3d 119, 144 (2d Cir. 2006)).

Robbery under Conn. Gen. Stat. § 53a-133 has the same essential elements as robbery under 18 U.S.C. § 2111 and 2113, which are both identified as serious violent felonies in § 3559(c)(2)(F)(i); both require the use or threat of immediate use of force to take or overcome resistance to the taking of the victim's property or other thing of value. *Compare* 18 U.S.C. § 2113 (when a person "by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . .") *with* Conn. Gen. Stat. § 53a-133

(requiring that the person "uses or threatens the immediate use of physical force upon another" in commission of the offense).[5]

Other courts evaluating similarly worded state statutes have reached similar conclusions. *See Shabazz v. United States,* 912 F.3d 73, 78 (2d Cir. 2019) (holding that robbery under Conn. Gen. Stat. § 53-133 was a violent crime for purposes of the ACCA and could serve as a predicate offense); *Snype,* 441 F.3d at 144 (finding the elements of a New York statute defining robbery as "forcible stealing" when the person "uses or threatens the use of physical force," were "parallel" to "those required to establish robbery" under 18 U.S.C. § 2111 and 2113, qualifying them as serious violent felonies"); *United States v. Wicks,* 132 F.3d 383, 387 (7th Cir. 1997) (holding that Illinois' statute, which defined robbery as "when he or she takes property [except in cases involving a motor vehicle, which are covered by a different statute], from the person or presence of another by the use of force or by threatening the imminent use of force" was "consistent with the definition of robbery provided in 18 U.S.C. §§ 2111, 2113, and 2118.")[6] Thus, the Court finds that Defendant's

---

[5] The commentary on § 53a-133 further highlights that the conduct both statutes seek to reach is the same: "[t]his section defines robbery [as] larceny accompanied by force or threat. . . . [t]he basic rationale is protection against the terror of the forcible taking." Conn. Gen. Stat. § 53a-133, Commission Comment.

[6] While the Second Circuit referenced *Barrett*, 937 F.3d 126 in its grant of Petitioner's motion for leave to file a successive 2255 petition as suggesting that this conviction for conspiracy to commit robbery might not qualify as a serious violent felony, *Barrett* is inapplicable. The analysis in *Barrett* centered on an evaluation of whether conspiracy to commit Hobbs Act robbery was a violent felony under § 924(c)(3)(B); the court held that did not qualify under the hybrid elements and residual clause analysis it had applied prior to *Davis,* and could not be qualified as a categorical crime of violence under the elements clause alone. *Id.* at 129. *Barrett* never reached the question of whether conspiracy to commit robbery would have met the definition of violent felony based on an enumerated offense clause, because § 924(c)(3) had no such clause; as such, its holding does not preclude a finding to the contrary when evaluating the separate statutory provision in § 3559(c)(2)(F)(ii).

conviction for conspiracy to commit robbery meets the definition of a serious violent felony

unless he can show otherwise under the escape valve provision of § 3559(c)(3)(A).

### b.  § 3559(c)(3)(A) Exception and Waiver

Petitioner argues that even if conspiracy to commit robbery qualifies under

§ 3559(c)(2)(F)(i) as a serious violent felony, it falls under the exception in 18 U.S.C. §

3559(c)(3)(A), which states:

> (A) Robbery in certain cases. Robbery, an attempt, conspiracy, or solicitation to
> commit robbery; or an offense described in paragraph (2)(F)(ii) shall not serve as a
> basis for sentencing under this subsection if the defendant establishes by clear and
> convincing evidence that[:]
>
>> (i) no firearm or other dangerous weapon was used in the offense and no
>> threat of use of a firearm or other dangerous weapon was involved in the
>> offense; and
>>
>> (ii) the offense did not result in death or serious bodily injury (as defined in
>> section 1365) to any person.

The Government contends Petitioner has waived any argument as to the applicability

of 18 U.S.C. § 3559(c)(3)(A) by not raising it at sentencing. (*See* Gov't's First Response at 6

[Doc. # 13], n.3).[7] However, courts have considered the applicability of § 3559(c)(3)(A) in

either an appeal or habeas motion without first evaluating whether the argument was

initially raised at sentencing, instead considering whether the facts in the record as they

existed at sentencing would warrant a finding that § 3559(c)(3)(A) applies. *See United States*

---

[7] At sentencing, the Court asked for confirmation that there was no "objection from
either side on the guideline analysis and application in that regard." (*United States v.
Suggs,* 3:99-cr-0244, Sentencing Tr. at 4.) Defense counsel confirmed that his only
objection was as to the applicability of *Apprendi,* and his argument that if *Apprendi*
were extended, the prior offenses should be disregarded since they were neither pled
in the charging document nor determined by a jury, which would change the
maximum statutory penalty. (*Id.*) There was no mention of the applicability of 18
U.S.C. § 3559(c)(3)(A).

*v. Bush*, No. CR 5:21-0039-DCR, 2022 WL 2110320, at *5 (E.D. Ky. June 10, 2022) (evaluating whether a defendant met the requirements of § 3559(c)(3)(B), the analogous nonqualifying felony provision for arson, despite expressly finding that the defendant never raised it at sentencing); *Richitelli v. United States*, No. 09-60229-CR, 2016 WL 9132037, at *2 (S.D. Fla. Oct. 25, 2016), *report and recommendation adopted*, No. 09-60229-CR, 2016 WL 9131794 (S.D. Fla. Dec. 6, 2016) (considering application of § 3559(c)(3)(A) even when not specifically raised at sentencing.)

Because Defendant would have had no reason to raise the applicability of § 3559(c)(3)(A) pre-*Johnson,* the Court concludes that Defendant has not waived any arguments under § 3559(c)(3)(A).

### c.  Nonqualifying Felonies under § 3559(c)(3)(A)

The burden is on Petitioner to show that each element of § 3559(c)(3)(A) is met by "clear and convincing" evidence. *See United States v. Kaluna,* 192 F.3d 1188, 1195 (9th Cir. 1999) (holding that § 3559(c)(3)(A) "is a kind of affirmative defense to the use of certain prior violent felonies as a sentencing factor.") Petitioner must show both that there was no weapon used, and that no threat of use of a weapon was involved. *See United States v. Washington*, 109 F.3d 335, 337 (7th Cir. 1997) (holding that it was not enough to merely show that there was no use of a weapon if the use of a weapon was threatened.)

Petitioner asserts based on facts in the record at sentencing that "Mr. Suggs's 1983 conspiracy conviction is outside [§ 3559's] definition of serious violent felony" and firearms were never "used," or threatened" under the meaning of the terms as construed in *United States v. Gottlieb*, 140 F.3d 865, 871 (10th Cir. 1998) because no robbery occur[ed], "the offense did not result in death or serious bodily injury," and "no potential victim was ever identified," so "[t]here can have been no 'threat' to a possibility of a future victim." (Pet'r's Mem. [Doc. # 12] at 7); Pet'r's Reply [Doc. # 14] at 5.) Because the terms "use" and "threat of

use" in § 3559(c)(3)(A) undefined by either the statute itself or by the Second Circuit, the Court will first determine what meaning to give them.

### i. "Use" and "Threat of Use"

In *Gottlieb*, the defendant was subject to the same sentencing enhancement as Petitioner under 18 U.S.C § 3559(c) for two prior convictions, one of which was a conviction for "conspiracy to obstruct and affect commerce by robbery." *Gottlieb*, 140 F.3d 866-67. The defendant had conspired with two undercover agents to abduct two individuals and leverage them as hostages to extort a bank president. *Id.* at 866-67. The undercover agents testified that they offered defendant a (nonfunctional) firearm because during the planning of the conspiracy, he expressed a desire to have one; when he reached for it, he was arrested. *Id.* To determine whether the defendant's conduct met the requirements of a nonqualifying felony under § 3559(c)(A), the Tenth Circuit first evaluated whether the defendant had "used" a firearm or dangerous weapon in the offense, defining the term as requiring "active employment" of a firearm. The court recognized that "[w]hen the underlying crime is an inchoate rather than a substantive offense, application of [its] definition of 'use' is more difficult," but found there that the defendant did not use a firearm because he was arrested "before he even touched the firearm in question," and the fact that he "attempted to acquire and intended to possess a firearm during the planned but frustrated robbery" was not enough to show active employment. *Id.* at 872. As for whether "threat" of use had been "involved", the court declined to find whether the term solely meant "a communicated intent to engage in a harmful act against someone or something," or whether it could also mean "risk of use" because under either construction, the firearm was in "sole control of the federal agents" at all times, and thus never posed a threat of use. *Id.* at 872-73.

Determining whether Petitioner's conviction involved "threat of use" of a firearm requires resolution of the question that *Gottlieb* left unanswered: whether "threat of use" can

be read to mean "risk of use."[8] The Government summarily asserts that based on the facts, the record "plainly shows that there was a threat that a firearm would be used in the offense." (Gov't's First Response [Doc. # 13] at 6.) Petitioner construes the Government's argument to include in the definition of "threat" either "an indication of an approaching menace; the suggestion an impending detriment" or "a person or thing that might well cause harm," which are the second and third definitions listed for "threat" in Black's Law Dictionary. (Pet'r's Reply [Doc. # 14] at 4-5.) Petitioner argues "threat" should be narrowly construed using only the primary definition given to it in Black's: "A communicated intent to inflict harm or loss on another or another's property. . .[,]"

When both parties "rely on a reasonable meaning" of a statute, courts resort to canons of statutory interpretation to help resolve ambiguity. *United States v. Dauray*, 215 F.3d 257, 262 (2d Cir. 2000). The Court begins by looking at the statutory language both in the context it is used, and in broader context of the statute as a whole.[9] *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005). Section 3559(c)(2)(f)(i), the part of the statute listing

---

[8] The parties do not disagree over defining "use" as active employment.

[9] As noted in *Gottlieb,* the legislative history of the escape valve's inclusion does not provide clear guidance. On one hand, the original text of § 3559(c)(3)(A)(i) required that no firearm be "involved" in the offense, which would result in a much broader category of defendants failing the 3559(c)(3)(A)(i) requirements. On the other hand, the representatives speaking in favor of the amendment appeared to be under the impression that they were clarifying any ambiguity that "involved" might have created, and suggested that the new language was meant to "strengthen[ ] the bill by increasing the number of repeat offenders subject to the three strikes" and "clos[ing] loopholes which may have been left open." 140 Cong. Rec. H2415, H2432 (daily ed. Apr. 19, 1994); *see also* R. Daniel O'Connor, *Defining the Strike Zone-an Analysis of the Classification of Prior Convictions Under the Federal "Three-Strikes and You're Out" Scheme*, 36 B.C. L. Rev. 847, 877 (1995) (although "[n]o legislative history exists explaining why the House of Representatives employed a collateral review provision," the "floor debate accompanying a House amendment to the collateral review subsection indicates that Congress generally desired to sharply focus the three-strikes law to remove those individuals who repeatedly threatened their fellow citizens.") Although the Court views this history as seeming to weigh slightly in favor of a broader interpretation, as in *Gottlieb*, the Court declines to base its decision on murky legislative history.

specific crimes that qualify as serious violent felonies, includes both firearms use *and* firearm possession. Firearm possession is also *not* listed as one of the offenses that can be classified as a nonqualifying felony under the exception in § 3559(c)(3)(A)(i). The Court reads the interaction between these two sections to mean that that the presence of firearms alone, within the meaning of the statute, is viewed as creating a significant risk of harm, and weighs in favor of a broader definition of "threat" as "a person or thing that might well cause harm."

Another canon that aids the Court's interpretation is the "anti-surplusage" canon, which dictates that it is a court's "duty to give effect, if possible, to every clause and word of a statute," *Duncan v. Walker*, 533 U.S. 167, 174 (2001), and when possible, to "avoid statutory interpretations that render provisions superfluous," *State St. Bank & Tr. Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003). § 3559(c)(3)(A) contemplates that "[r]obbery, an attempt, conspiracy, *or* solicitation to commit robbery" (emphasis added) are all offenses that can fall under the nonqualifying felony exception. This creates two options: each crime may either be a serious violent felony that nevertheless meets the requirements for the escape valve in § 3559(c)(3)(A)(i), or it is both a serious violent felony and a crime that fails § 3559(c)(3)(A)(i)'s requirements. While it might seem that the Court is stating the obvious, these two scenarios are critical for understanding that if a conspiracy to commit robbery *always* met the requirements of the escape valve and could never fail to meet them, its inclusion in both § 3559(c)(2)(f)(i) and § 3559(c)(3)(A)(i) would be surplusage. Consider the following scenario: a sentencing court finds that a defendant has a predicate offense of conspiracy to commit robbery, which qualifies as a serious violent felony because it is listed in § 3559(c)(2)(f)(i). The court moves on to determine whether the offense met the criteria for the escape valve of § 3559(c)(3)(A)(i); if conspiracy to commit robbery cannot ever involve a use or threat of use of firearms because of the way "use" and "threat of use" are defined, it will automatically qualify for the escape provision, and the court will forever reach the same result each time it goes through this process. The Court thus approaches the

analysis with a recognition that any definition of "threat of use" or "use" must avoid reading the statute in a way that would require such an exercise in superfluity.

The canon against surplusage also requires that each crime, on its own, must be able to meet or fail § 3559(c)(3)(A)(i)'s requirements without merging into the commission of another crime; for example, if conspiracy to commit robbery only reaches the level of involving use or threat of use of firearms when it would also qualify as attempt, there would be no need to include conspiracy as part of the list. This is exactly the scenario created by Petitioner's proposed definition of threat—"a communicated expression *to a victim* that the defendant would use a firearm," *see Gottlieb,* 140 at 872— because by the time a conspiracy reaches the point of communicating an intent to use a firearm to a victim, it is no longer simply conspiracy; it is either robbery or attempted robbery. Consider an example: a defendant is convicted of conspiring with other individuals to rob a bank. Every participant was carrying a semiautomatic rifle, and in the past, these same individuals all fired guns and injured bank tellers while committing bank robberies. He believes they are likely to do so again in this instance. However, their car will not start, and so they never reach the point of choosing a bank to rob or making any substantial steps towards the robbery itself. Using Petitioner's definition, the defendant would qualify for the escape provision of § 3559(c)(3)(A), because he would not have committed a crime in which there was a "threat of use" of force, despite the fact that his coconspirators had every intention of going into a bank and firing at bank tellers if not for their bad luck. If the defendant had gone further, however, and actually threatened the bank teller with the firearm to hand over money, it would be robbery (if the teller complied) or attempted robbery (if the teller refused).

This example is not an anomaly; at oral argument, Petitioner's counsel could think of no example of an instance in which a defendant could conspire to commit robbery in a way that involved a threat of use of force as Petitioner defined it without also having committed either attempted or actual robbery. In other words, Petitioner's definition creates a scenario

in which so long as the defendant stops short of committing actual or attempted robbery as part of their conspiracy, he or she will always qualify for the escape provision, creating the very problem of surplusage envisioned by the Court at the start of this analysis. The reading becomes even more strained when considering solicitation to commit robbery; it is difficult to envision a scenario in which solicitation to commit robbery, standing alone, would involve a communicated intent to use a firearm against a victim. A definition of "threat" that makes both conspiracy and solicitation automatically qualify for the escape provision when standing alone, and which thus makes their presence in the larger statutory scheme as serious violent felonies entirely unnecessary, runs contrary to the Court's duty "to give effect, if possible, to every clause and word of a statute." *State St. Bank & Trust Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003).

Petitioner's argument that adopting the Government's definition would mean any "threat" of violence in the "disembodied possibility sense" would be sufficient to make a crime fail the § 3559(c)(3)(A) requirement lacks merit. First, *Gottlieb* explained defining "threat" to encompass "risk of use" still requires evaluation of "the demonstrated risk that a firearm will be used in a particular offense" rather than the assumption that a risk existed based on the "general risk inherent in all violent crimes that a firearm may be used." *Id.* at 872-73. Second, contrary to Petitioner's interpretation, *Borden* did not hold in the general sense that "the use or threat of force must be an action taken, not a looming possibility of force detached from any human action." (Pet'r's Reply [Doc. # 14] at 5.) Rather, in evaluating the elements clause of the ACCA, it held that "[t]he phrase [in the ACCA] 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Borden,* U.S. 141 S. Ct. at 1825. Unlike the elements clause of either § 3559(c)(2)(F) or the ACCA, however, § 3559(c)(3)(A) does not modify "use" or "threat of use" with the phrase "against another"; rather, it uses more general language such as

"involved in the offense," which bolsters rather than undermines the argument that a broader definition is warranted.

Finally, Petitioner's concern that to adopt the broader definition would be to "re-import the residual clause into the discussion of crimes of violence" is unwarranted, because the features that made the residual clause unconstitutional were uncertainty over how to define and quantify risk when using the *categorical* approach. Section 3559(c)(3)(A) explicitly requires the opposite by requiring defendant to offer proof specific to the facts of his case, as opposed to that of an "ordinary crime." The Court thus finds that the definition of "threat" can encompass either "communicated intent" to use force, or the "risk of use" of force when evaluating whether Petitioner's conviction involved a "threat of use" of force.

### ii.   Application to Petitioner's Conviction

Petitioner relies on the Presentence Report's recounting that[10] he told Probation during the presentence investigation that "[t]he dude and they were getting ready to rob someone. I didn't know they had guns in the car. I was riding around with them getting high," (Pet'r's Reply [Doc. # 14] at 5), to argue that because "no potential victim was ever identified," Petitioner argues there was no threat. (*Id.*) The Government, however, focuses on Petitioner's statement made during the initial arrest "to the effect that he and the two others had agreed to do a robbery in the city and were looking for a victim when they were stopped," and the fact that "a fully loaded sawed off shotgun, and a .22 caliber revolver" were recovered from the vehicle that Petitioner and his coconspirators were apprehended in, to argue support for a finding of a threat of use of firearms. (Gov't's Mem. in Opp'n [Doc. # 5] at 6.)

---

[10] Petitioner confirmed at oral argument that neither party is requesting an evidentiary hearing and that both sides believe one is unnecessary. While Petitioner's counsel raised the prospect of possible further investigation into the state court records of his conviction and supplemental filings, there have been no further filings since oral argument.

Courts have found that "'use' takes on different meanings depending on context." *United States v. Phan*, 121 F.3d 149, 153 (4th Cir. 1997). In *Phan,* for example, the court found that mere possession of a handgun with intent to use it during a robbery would not constitute use, but "[i]n the context of the inchoate crime of conspiracy to commit robbery," "the giving of firearms to a fellow conspirator constitutes active employment." Neither situation is present here, however; Petitioner was not found in possession of a firearm, nor is there any record suggesting that he was the one who provided or stored the firearms in the car. In other words, there is nothing to demonstrate that Petitioner "actively employed" and thus "used" a firearm for purposes of § 3559(c).

However, under the definition of "threat of use" outlined above, it is equally clear that he cannot carry his burden of showing by clear and convincing evidence that no such threat was "involved in the offense." The fact that Petitioner agreed "to do a robbery in the city" and was "looking for a victim" while in a car that had several loaded weapons is a substantial barrier to Petitioner's providing "clear, direct, and weighty" evidence that allows the Court to make a determination in his favor "without hesitancy" as the clear and convincing evidence standard requires. *Blair v. Inside Ed. Prods.*, 7 F. Supp. 3d 348, 358 (S.D.N.Y. 2014). Petitioner's reliance on *United States v. Barnwell* is misplaced. In *Barnwell,* defendant "assaulted two people while attempting to retrieve money he claimed one of the individuals owed to him," but despite inflicting bruises and abrasions, "no one indicated Barnwell used or threatened to use a weapon," and the indictment "ma[de] no mention of a weapon." No. 3:20-CR-623, 2021 WL 1964261, at *1 (N.D. Ohio May 17, 2021). The lack of evidence in *Barnwell* contrasts with this case where there is evidence of weapons in the vehicle that Petitioner and his co-conspirators were driving around in looking for a victim to rob.

Notwithstanding Mr. Suggs' indication to the US Probation Office that he did not know that there were guns in the car, "the pertinent inquiry under § 3559(c)(3)(A) is not whether [defendant] can convincingly show that *he* never used or threatened to use a firearm in the

course of the robbery conspiracy; it is whether he can show that *no participant* in the conspiracy used or threatened the use of a firearm." *Snype,* 441 F.3d at 146. It is obvious that Petitioner's co-conspirators brought firearms with them and put them in the car before leaving to drive around and look for someone to rob, creating a very real "risk of use" of the firearms in the prospective robbery and undercutting Petitioner's proffered proof of no "threat of use" of those firearms in the conspiracy.

Petitioner's prior conspiracy to commit robbery conviction does not qualify for the exception in § 3559(c)(3)(A), and thus qualifies as a predicate serious violent felony offense for purposes of his sentence.

## IV. Conclusion

Based on his primary conviction for Hobbs Act robbery, his July 28, 1989 conviction for first degree assault, and his September 1983 conviction for conspiracy to commit robbery, the Court finds that Petitioner has three serious violent felony offenses in total, and thus declines to modify his sentence under the Three Strikes Act. His petition under 28 U.S.C. § 2255 is denied.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of March, 2023